IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MATTHEW WIGGINS,

    Plaintiff,

v.                                                                                 No. 22-cv-279-JCH-KBM

DAVID GONZALEZ, et al.,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

    Plaintiff Matthew Wiggins is incarcerated and proceeding *pro se* and *in forma pauperis*. Before the Court are Plaintiff's Amended Complaint (Doc. 5) (the "Complaint"); Plaintiff's Motion for Declaratory Judgment (Doc. 9); Plaintiff's Motion to Designate Magistrate (Doc. 12); Plaintiff's Motion to Serve Defendants (Doc. 14); Plaintiff's Motion: showing the above cases are one case, refund is warranted (Doc. 17) (the "Refund Motion"); and Plaintiff's Motion for a Temporary Restraining Order (Doc. 21) (the "TRO Motion"). Having reviewed the Complaint and the relevant law pursuant to the screening requirement of 28 U.S.C. § 1915A, the Court will dismiss the Complaint for failure to state a claim upon which relief can be granted. Plaintiff will be granted an opportunity to file a second amended civil rights complaint. For the reasons set forth below, each of the pending motions will be denied.

                                              **I.       The Complaint**

    A.  <u>Facts</u>.

    For the limited purpose of this Memorandum Opinion and Order, the Court assumes without deciding that the allegations in the Complaint are true. Plaintiff is in the custody of the

New Mexico Corrections Department (NMCD), housed in the Penitentiary of New Mexico (PNM). He is suing Deputy Warden David Gonzalez, Secretary of Corrections Alisha Tafoya Lucero, PNM's Chaplain, Summit Food Service, Director of Adult Prisons Gary Maciel, Grievance Officer Daniel Sedrio, PNM Unit Manager Lucero. Plaintiff seeks to sue Maciel, Sedrio, and Tafoya Lucero in their individual and official capacities. (Doc. 5 at 11).

Plaintiff's allegations fall into apparent categories, one related to PNM's grievance procedures and the other related to the exercise of his Islamic faith. As to the grievance procedures, Plaintiff appears to allege that Defendants are inadequately investigating or resolving his grievances related to the whereabouts of a $402 filing fee and to the absence of Muslim volunteers from PNM. He claims that in April 2022, he submitted a grievance to or about the Chaplain, claiming that the Chaplain was not seeking Muslim representatives to volunteer at PNM. (Doc. 5 at 4). In May 2022, Sedrio, whom Plaintiff alleges is one of the Defendants charged with investigating grievances, responded in writing—citing the Chaplain's report that :

> PNM [h]as not had an Islamic volunteer for the past 2 yrs. On account of the pandemic. It was NMCD policy that there would be no outside volunteers up to this point. We are in communication with our Islamic volunteer to see if he would like to come back into the facility.

(Doc. 5 at 4, 17).  Plaintiff appealed, and received a written response in July 2022 from Marciel, stating, in substantive part,

> Grievance officer was correct in the response to you.  At this point the Islamic Volunteers are not willing to come back to the facility and follow all institutional requirements. At no time will NMCD not allow you to practice your religious beliefs.

(Doc. 5 at 5, 15).

In August 2022, Plaintiff initiated another grievance, this time related to a filing fee for Case No. 21-cv-670-KWR-KBM. At the time he filed the Complaint, Plaintiff apparently believed

that the filing fee had been lost by PNM. In fact, the filing fee was timely received by the Court on September 29, 2021 but, owing to a receipting error in the Clerk's Office, it was not recorded until November 30, 2022. *See id.* at Doc. 24. The error has now been corrected and Case No. 21-cv-670 has been re-opened. *See id.* at Doc. 25.

Before the Clerk's Office discovered and advised Plaintiff of the receipting error, Plaintiff allegedly filed several grievances within PNM regarding the missing money. (Doc. 5 at 8). Plaintiff appears to allege that the grievances were handled by Lucero. (Doc. 5 at 7). Plaintiff alleges that the investigation and grievances were handled unjustly, biasedly, slowly, and incompetently by Lucero in association with Gonzalez and others not named as defendants. (Doc. 5 at 5-6). He also alleges that some grievances were never answered. (Doc. 5 at 9).

Turning to the second category of allegations, the issue of Plaintiff's ability to practice his religion, Plaintiff alleges that Defendants have not tried hard enough to find Muslim volunteers who are willing to follow PNM's institutional requirements. (Doc. 5 at 9). Plaintiff also alleges that NMCD is prejudiced against ordering halal meals for him from a vendor of Halal products which, it appears, Plaintiff pays for personally. (Doc. 5 at 10, 22-23). Plaintiff's allegations regarding the Halal meals are vague and unclear and it is difficult to discern their import. If Plaintiff files an amended complaint in which these allegations are relevant, he should clarify them.

Based on the foregoing and similar additional allegations, Plaintiff seeks to state claims for violations of his constitutional rights under 42 U.S.C. § 1983. In addition to monetary relief, he seeks a permanent injunction requiring Defendants to change their grievance and appeals processes and to find Muslim volunteers who are willing to follow PNM's institutional requirements. (Doc. 5 at 11-12). It appears that Plaintiff may also seek to state a claim under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000bb-1, *et seq.* (RLUIPA). (Doc. 5 at 6).

B.  Standard of Review.

Where, as here, a plaintiff is proceeding in forma pauperis, the Court screens the claims under 28 U.S.C. § 1915A.  The Court must dismiss a prisoner civil action sua sponte "if the complaint ... is frivolous, malicious, or fails to state a claim on which relief may be granted." 28 U.S.C. § 1915A(b)(1). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because he is *pro se*, the Court construes Plaintiff's pleadings liberally and holds them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (discussing the Court's construction of *pro se* pleadings). This means that "if the court can reasonably read the pleadings to state valid claim on which [he] could prevail, it should do so despite [his] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction or his unfamiliarity with pleading requirements." *Id.*  Nevertheless, the Court will not "assume the role of advocate for the pro se litigant." *Id.*

C.  Plaintiff Has Failed to State a Viable § 1983 Claim.

42 U.S.C. § 1983 provides a vehicle for the vindication of substantive rights guaranteed by the Constitution and laws of the United States. It allows a person whose federal rights have been violated by state or local officials "acting under color of state law" to sue those officials. *Id.* A § 1983 claim is comprised of two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person

4

acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *McLaughlin v. Bd. of Trustees of State Colls. of Colo.*, 215 F.3d 1168, 1172 (10th Cir. 2000). To state a viable claim a plaintiff must allege that each government official, through the official's own individual actions, has violated his Constitutional rights. *See Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 1998). There must also be a connection between the official conduct and the Constitutional violation. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008); *Trask*, 446 F.3d at 1046. The complaint must clearly identify "exactly *who* is alleged to have done *what* to *whom*" so that each defendant has notice of the basis of the claims against them, particularly. *Robbins v. Okla.*, 519 F.3d 1242, 1250 (10th Cir. 2008).

   1. Official Capacity Claims.

To the extent Plaintiff seeks to state claims against any state official in their official capacities, the claims fail as a matter of law. § 1983 does not override the States' Eleventh Amendment sovereign immunity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). A suit against a "state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Id.* at 71. "As such, it is no different from a suit against the State itself." *Id.* Thus, state "officials acting in their official capacities are [not] 'persons'" subject to liability under § 1983. Plaintiff's "official capacity" claims against any of the named will therefore be dismissed with prejudice.

   2. Institutional Grievance Procedures Claims.

To the extent Plaintiff seeks to state claims against any of the Defendants based on their failure to abide by the established grievance procedures or their failure to investigate or resolve the grievances in a manner satisfactory to Plaintiff, such claims are not actionable under § 1983. "[T]he state's voluntary provision of an administrative grievance process [does not] create a liberty

interest in that process" or confer constitutionally protected substantive rights upon the inmates." *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011); *Burnett v. Allbaugh*, 715 F. App'x 848, 851 (10th Cir. 2017) ("There is no independent constitutional right to state administrative grievance procedures."). "Instead, [w]hen the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance." *Boyd*, 443 F. App'x 331, 332; *Sawyer v. Green*, 316 F. App'x 715, 717 n.3 (10th Cir. 2008) (holding officials' lack of response to prisoner's grievances did not constitute a constitutional violation because "[p]rocedurally, nothing more is required than [the inmate's] ability to raise his constitutional claims in the courts, which he obviously has done here by filing a § 1983 complaint."). To the extent Plaintiff seeks monetary or injunctive relief arising from PNM's alleged failures to abide by its grievance procedures/adequately respond to or investigate Plaintiff's grievances, or prospectively change the procedures, the claims are not actionable under § 1983 and will therefore be dismissed with prejudice.

    3.  <u>First Amendment Claims</u>.

In relevant part, the First Amendment to the United States Constitution protects the free exercise of religion. "[A] prison inmate retains [his] First Amendment rights [to the extent they] are not inconsistent with this status as a prisoner or with the legitimate penological objectives of the prison system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Accordingly, prison regulations and actions of prison officials that impinge on an inmate's First Amendment rights are valid "if [they are] reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Frazier v. Dubois*, 922 F.2d 560, 562 (10th Cir. 1990) (same). To allege a constitutional violation based on a free exercise claim, a prisoner-plaintiff must show that a prison regulation

substantially burdened sincerely[] held religious beliefs." *Kay v. Bemis*, 500 F.3d 1214, 1218–19 (10th Cir. 2007) (alterations, internal quotation marks, and citations omitted). The government can substantially burden a religious exercise by (1) preventing participation in conduct motivated by a sincerely held religious belief; (2) placing substantial pressure on an adherent to not engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief; or (3) requiring participation in an activity prohibited by a sincerely held religious belief. *Khan v. Barela*, 808 F. App'x 602, 614–15 (10th Cir. 2020). If the Plaintiff satisfies this pleading standard, prison officials must then "identif[y] the legitimate penological interests that justified the impinging conduct." *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007), 486 F.3d at 1182. At that point, the Court must determine the reasonableness of the regulation or conduct by considering:

> (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Boles*, 486 F.3d at 1181.

Here, Plaintiff has not satisfied the initial pleading standard because he has not alleged that any Defendant's conduct or any existing regulation substantially burdened a religious exercise. That the Muslim representatives who formerly volunteered at PNM have stopped doing so because they do not want to follow PNM's (apparently) pandemic-related institutional requirements does not constitute official pressure to refrain from religious conduct or to engage in religiously prohibited conduct. Nor does Plaintiff allege that their absence prevents Plaintiff from practicing his religion. Even if it did, however, the allegations are reasonably clear that the conduct at issue is that of volunteers themselves, not PNM officials. To the extent Plaintiff seeks to state a § 1983

claim against Defendants based on their allegedly inadequate effort to find Muslim volunteers who are willing to follow the institutional requirements, the First Amendment does not support such a claim. Prison officials may not unreasonably prohibit religious exercise, but they are also not required to exhaustively pursue religious representatives when none are forthcoming. *See e.g., Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972) ("A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand. But reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendment without fear of penalty."); *Hall v. Elbe*, No. 18-CV-01056-PAB-NRN, 2022 WL 16855691, at *13 (D. Colo. Nov. 9, 2022) (rejecting the defendant's claim that prison officials' failure to facilitate access to an Imam in prison violated his First Amendment rights).

    4.  <u>RLUIPA Claims</u>.

In relevant part, RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... unless the government demonstrates that imposition of the burden on that person—
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a). Thus, to proceed with a RLUIPA claim, a plaintiff must demonstrate he wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government. *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312 (10th Cir. 2010).

    The allegations in Plaintiff's Complaint do not satisfy these elements. Plaintiff has not alleged that Defendants are burdening his right to exercise his religion. Rather, he alleges that they are not doing enough to draw religious volunteers into the facility. But "RLUIPA requires

8

governments to refrain from substantially burdening religion, not to affirmatively subsidize" it. *Id.* at 1320. The statute does not impose an affirmative obligation on Defendants to expend resources seeking and attracting volunteers to PNM when none are available who are willing to comply with the institution's safety protocols. To the extent the Complaint includes a RLUIPA claim, such claim will be dismissed accordingly.

    5. Halal Meals Claim.

To the extent Plaintiff seeks to state a claim regarding his Halal meals, the Court is unable to discern what the claim might be, against whom, and in violation of what Constitutional or statutory right. If Plaintiff wishes to pursue this claim in an amended Complaint, he should provide sufficient factual detail to comply with the pleading standards discussed above.

    6. Claims Arising from the Misapplied Court Filing Fee.

To the extent Plaintiff seeks to state claims against the Defendants based on the missing filing fee funds, it appears that any such claims are now moot or would otherwise fail. As indicated in Case No. 21-cv-670-KWR-KBM, Doc. 24, the funds were timely received by the Court, but owing to a receipting error, they were not applied to Plaintiff's case. The Court has resolved this. There is no indication that Defendants' conduct neither caused nor contributed to the error.

    D. Leave to Amend.

Generally, *pro se* plaintiffs should be given a reasonable opportunity to remedy defects in their pleadings. *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). The opportunity to amend should be granted unless the amendment would be futile. *Hall*, 935 F.2d at 1109. Accordingly, Plaintiff shall be granted a thirty-day deadline within which to file an amended complaint. If Plaintiff declines to timely amend, the Court may dismiss the case with prejudice.

## II.     Plaintiff's Motion for Declaratory Judgment

In the Motion for Declaratory Judgment, Plaintiff seeks injunctive and declaratory relief that would prevent Defendants from interfering with his ability to submit his six-month account statement in support of his application to Proceed *In Forma Pauperis* and from blocking him paying filing fees in this case. (Doc. 9 at 2-3). As Plaintiff submitted his account statement, has been granted leave to proceed IFP, and has submitted his required initial partial payment, it appears that the Motion for Declaratory Judgment is moot. *See* (Docs. 4, 6, 11). The Motion is also premature. As the Complaint is subject to the screening requirement of § 1915A, Defendants have not entered an appearance. Moreover, as the Court has now concluded that the Complaint does not survive initial review, there are no pending claims upon which relief could be granted. The Motion for Declaratory Judgment (Doc. 9) shall be denied accordingly.

## III.     Plaintiff's Motion for Order to Designate Magistrate

In Plaintiff's Motion to Designate a Magistrate, Plaintiff seeks to initiate and/or pursue criminal charges against certain defendants identified in an attached handwritten "Criminal Information" and to have this Court enter an order appointing a magistrate to preside over the matter. (Doc. 12 at 1-2). It is well established that private citizens lack standing to prosecute others. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Higgins v. Neal*, 52 F.3d 337, *1 (10th Cir. 1995) (Table) (noting that "courts universally endorse the principle that private citizens cannot prosecute criminal actions"). The Motion to Designate a Magistrate (Doc. 12) shall be denied with prejudice.

## IV.     Plaintiff's Motion to Serve Defendants

Plaintiff's request that the Court serve the Defendants with a copy of the complaint is premature and moot. As discussed above, the Complaint fails to state a viable claim and will be

dismissed without prejudice. Should Plaintiff choose to file a second amended complaint, it will be subject to screening under § 1915A. In the event it survives screening, the Court will, as appropriate, issue an order directing issuance of notice and waiver of service forms to the defendants. Defendant need not file a motion to initiate that process. The Motion to Serve Defendants (Doc. 14) shall be denied.

## V. The Refund Motion

In the Refund Motion, Plaintiff (1) asks the Court to investigate the issue of the missing $402 filing fee in Case No. 21-cv-670-KWR-KBM, (2) argues that this case and that case are "the same," and (3) requests a refund of the $25 initial partial filing fee payment made in this case. (Doc. 17 at 1-2). Each form of relief will be denied as set forth below.

As to the missing filing fee, the matter has been resolved by the Court as discussed above and as set forth in Case No. 21-cv-670-KWR-KBM. This request is therefore moot.

To the extent Plaintiff implies that because this case and Case No. 21-cv-670-KWR-KBM are "the same," they should be consolidated, such relief is only appropriate if two or more "actions before the court involve a common question of law or fact." Fed. R. Civ. P. 42(a). "The purpose of consolidation … [is] to dispose of cases expeditiously and economically." *Cooper Clark Found. v. Oxy USA Inc.*, 785 Fed. App'x 579, 583 (10th Cir. 2019). As noted above, Plaintiff has failed to state a cognizable claim in this case. Further, in case 21-cv-670-KWR-KBM, Plaintiff's claims were not sufficiently defined in a cognizable pleading, and the operative pleading was dismissed without prejudice. *See id.* (Doc. 28). Even if Plaintiff intended to file the same claims here and in Case No. 21-cv-670-KWR-KBM, it would not serve judicial economy to consolidate before he files a cognizable pleading in that case or a viable pleading in this case. The Court will therefore deny the request for consolidation without prejudice.

11

Finally, Plaintiff's request for a refund must be denied. Section 1915 of Title 28 "calls for assessment of 'a[] … filing fee' each time a prisoner 'brings a civil action.'" *Bruce v. Samuels*, 577 U.S. 82, 89–90 (2016). Plaintiff elected to file a new action, rather than waiting for a resolution of the filing fee or other issues in Case No. 22-cv-279-JCH-KBM. While the situation may be frustrating, there is no authority permitting a refund under these circumstances. The Administrative Office of the United States Courts' Guide to Judicial Policy, which is persuasive authority, prohibits refunds:

> § 650.10 Applicability
>
> The Judicial Conference's current policy on refunding filing fees, in effect since 1949, has been broadly interpreted to generally prohibit refunds of fees due upon filing, even if a party filed the case in error or the court dismissed the case or proceeding.

Guide to Judiciary Policy, Vol. 4, Ch. 6, § 650.10, *available at* ttps://jnet.ao.dcn/policyguidance/ guide-judiciary-policy/volume-4-court-and-case-administration/ch-6-fees#650_10, site last visited March 3, 2023. *See also In re Sony BMG Music Entm't*, 564 F.3d 1, 7 (1st Cir. 2009) (noting the Guide is persuasive authority because it codifies the policies promulgated by the Director of the Administrative Office and "approved by the Judicial Conference of the United States."). The Court therefore declines to refund the partial filing fee paid in this case.

### VI.     The TRO Motion

Plaintiff's request for a Temporary Restraining Order ("TRO") will be denied. In determining whether to grant a TRO, the court must analyze the following factors: (1) whether the movant has a substantial likelihood of success on the merits; (2) whether irreparable harm will ensue if the request for a TRO is denied; (3) whether the threatened injury outweighs the harm that the TRO may cause the defendant; and (4) whether, if issued, the TRO will not adversely affect the public interest. *See General Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007). Plaintiff's request fails at the first stage of the analysis. As the Complaint fails to state

a viable claim, it necessarily follows that there is not a substantial likelihood of success on the merits. To the extent the TRO Motion expands the scope of the claims stated in the Complaint, the claims should be raised, if at all, in a second amended complaint. The TRO Motion (Doc. 21) will be denied without prejudice to Plaintiff's prerogative to seek such relief related to any claims in a second amended complaint if one is filed.

**IT IS ORDERED:**

Each of the claims set forth in the Complaint **(Doc. 5)** is **DISMISSED** as set forth above. Plaintiff is granted leave to file a second amended civil rights complaint within thirty days of the entry of this Memorandum Opinion and Order. Failure to do so may result in dismissal of this case without further notice.

**IT IS FURTHER ORDERED** that:

(1)  Plaintiff's Motion for Declaratory Judgment **(Doc. 9)** is **DENIED**.

(2)  Plaintiff's Motion to Designate Magistrate **(Doc. 12)** is **DENIED**.

(3)  Plaintiff's Motion to Serve Defendants **(Doc. 14)** is **DENIED**.

(4)  The Refund Motion" **(Doc. 17)** is **DENIED**.

(5)  The TRO Motion **(Doc. 21)** is **DENIED** without prejudice.

SENIOR UNITED STATES DISTRICT JUDGE